THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **SYNTHON IP, INC.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 1:05cv1267 |
| ) | |
| **PFIZER INC.,** ) | |
| **Defendant.** ) | |

## ORDER

The matter is before the Court on plaintiff Synthon IP, Inc.'s (Synthon) renewed motion for judgment as a matter of law pursuant to Rule 50(b), Fed. R. Civ. P., or in the alternative, motion for a new trial pursuant to Rule 59, Fed. R. Civ. P. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process. Indeed, many of the arguments advanced here by Synthon in its renewed motion were raised and fully briefed and argued in connection with previous motions. For the reasons set forth below, Synthon's post-judgment motions must be denied.

**I. Renewed Motion for Judgment as a Matter of Law**

Synthon first renews its motion for judgment as a matter of law pursuant to Rule 50, Fed. R. Civ. P., which motion was previously denied in the course of the jury trial.[1] Rule 50 provides, in pertinent part, that judgment as a matter of law may be granted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Rule 50(a)(1), Fed. R. Civ. P. In

---

[1] Rule 50(b) provides that a party "may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment," as Synthon did here. Rule 50(b), Fed. R. Civ. P.

1

other words, "[j]udgment as a matter of law is proper 'when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment.'" *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996) (citation omitted).[2]  In evaluating a motion for judgment as a matter of law, the evidence presented in the course of the jury trial, and all reasonable inferences therefrom, must be construed in favor of the non-moving party.  *Id.*  And, in all cases, the moving party "bears a hefty burden in establishing that the evidence is not sufficient" to support a jury verdict.  *Id.*

In support of its renewed motion for judgment as a matter of law, Synthon first objects to the Court's submission to the jury of alternative and allegedly erroneous claim constructions for the primary claim phrase in dispute, namely the phrase "isolating from a crude reaction mixture compound of formula (3)."[3]  On this issue, Synthon essentially reiterates numerous arguments that

---

[2]  Because a motion for judgment as a matter of law "is a procedural issue not unique to patent law," it is clear that Fourth Circuit, rather than Federal Circuit, law applies in this instance. *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1364 (Fed. Cir. 2006) (recognizing that "[t]he denial of a motion for judgment as a matter of law 'is a procedural issue not unique to patent law, which we review under the law of the regional circuit where the appeal from the district court normally would lie'") (citation omitted).

[3]  The two alternative constructions submitted to the jury were as follows:

> Alternative Construction #1
> "separating the compound of formula (3) from the other known components of the crude reaction mixture, except that following the act of separation, the resulting compound of formula (3) need not be pure; there may be present known and unknown impurities, unknown side products, as well as residual amounts of the other known components of the crude reaction mixture;" and
>
> Alternative Construction #2
> "separating the compound of formula (3) from the crude reaction mixture, except that this does not require that the compound of formula (3) be separated from all of the components of the crude

were already fully addressed and rejected in the course of the extensive *Markman* proceedings and dual claim construction opinions issued in this case.[4] And, because there exists no good cause or reason to reconsider the previous claim construction rulings, Synthon's motion for judgment as a matter of law based on the submission to the jury of two alternative and allegedly erroneous claim constructions is properly denied.

In a related argument, Synthon contends that a third alternative construction is actually the correct construction and thus, the construction that should have been presented to the jury, namely that "isolating from a crude reaction mixture compound of formula (3)" means "separating the compound of formula (3) from the crude reaction mixture by any conventional or known technique." In this regard, Synthon contends that "[n]o reasonable jury could find that Pfizer['s]...commercial process for synthesizing amlodipine does not infringe the asserted claims of the '481 patent under the correct construction of the claim term 'isolating from a crude reaction mixture compound of formula (3).'" Synthon Mot. at 1-2. But again, Synthon's proposed "conventional or known

---

reaction mixture or that the compound of formula (3) be pure."

*See Synthon IP, Inc. v. Pfizer Inc.*, 1:05cv1267 (E.D. Va. 2006) (Special Verdict Form).

[4] Following extensive briefing and oral argument, preliminary claim construction determinations issued pursuant to *Markman v. Westview Instruments*, 517 U.S. 370 (1996) and the facts and reasons in support of these determinations were recorded in a Memorandum Opinion dated June 30, 2006. *See Synthon IP, Inc. v. Pfizer, Inc.*, 446 F. Supp. 2d 497 (E.D. Va. 2006) (*Synthon I*). Synthon thereafter sought reconsideration, leading to yet another round of briefing and argument, which in turn led to the decision to submit specific validity and infringement interrogatories to the jury with directions to answer each interrogatory twice, once on the basis of the claim constructions reflected in *Synthon I* and then again based on the second set of claim constructions akin to those advocated by Synthon. Thereafter, a post-verdict opinion issued resolving the issues raised in Synthon's motion for reconsideration and making clear for the record the final claim construction definitions applicable to this case. *See Synthon IP, Inc. v. Pfizer, Inc.*, 457 F. Supp. 2d 668 (E.D. Va. 2006) (*Synthon II*).

technique" construction was already fully addressed and rejected in the course of the *Markman* proceedings. *See supra* n. 4. And significantly, Synthon is not entitled to judgment as a matter of law on a proposed claim construction that was never even presented to, or considered by, the jury.[5] Simply put, should Synthon wish to continue to pursue its various claim construction arguments — including the "conventional or known technique" argument — it must do so before the Court of Appeals for the Federal Circuit on direct appeal.

Synthon next argues that "[no] reasonable jury could find that Pfizer's commercial process for synthesizing amlodipine does not infringe the asserted claims of the '481 patent under the Court's alternative construction #2." Synthon Mot. at 2. On this issue, it should first be noted that alternative construction #2 was ultimately rejected by the Court following the jury trial, thus rendering Synthon's argument in this regard effectively moot. *See Synthon II*, 457 F. Supp. 2d 668 (adopting alternative construction #1 as the final definition applicable to the primary disputed claim phrase). Yet, even assuming alternative construction #2 is correct, ample evidence was presented in the course of the trial to support the jury's verdict of non-infringement under this construction. Indeed, a review of the record reveals, for example, substantial evidence that Pfizer's amlodipine production process does not "separat[e] the compound of formula (3) from the crude reaction mixture," as required by alternative construction #2.[6] *See supra* n.3. Synthon's motion for

---

[5] *See, e.g., Hewlett-Packard Co. v. Mustak Systems, Inc.*, 340 F.3d 1314, 1321 (Fed. Cir. 2003) (recognizing that "it is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language" in the light of the specification and the prosecution history as "[t]he verdict must be tested by the charge actually given").

[6] For example, Pfizer's expert, Dr. Paul Bartlett, testified that the distillation of isoproponal in Pfizer's amlodipine production process does not separate the compound of formula (3) from the crude reaction mixture because "the distillation leaves the compound of formula (3) behind." *See* 8/14 Jury Trial Transcript (JTT) at 226-28. Dr. Bartlett further testified

judgment as a matter of law with respect to the issue of infringement under alternative construction #2 must therefore be denied.

Synthon also requests judgment as a matter of law on all four validity issues presented to the jury and decided in Pfizer's favor, namely

(i) anticipation by Sandwich Drug Discoveries (SDD) and Dihydropyridines in Action (DIA) under 35 U.S.C. § 102(a) and (b),

(ii) derivation from Pfizer's work under 35 U.S.C. § 102(f),

(iii) prior invention by Pfizer under 35 U.S.C. § 102(g), and

(iv) obviousness under 35 U.S.C. § 103.

In this regard, Synthon first claims that "[n]o reasonable jury could find" that either SDD or DIA discloses all of the limitations of the asserted claims of the '481 patent, including the limitation of "isolating from a crude reaction mixture compound of formula (3)," found in all of the asserted claims, as well as the limitation of using "aqueous methylamine" to deprotect the compound of formula (2), found in dependent claims 4 and 14. Synthon Mot. at 2. As an initial matter, it is important to note that Synthon never separately argued the validity of dependent claims 4 and 14 in the course of the jury trial, but instead focused exclusively on the "isolating" limitation of claim 1, the sole independent claim. Because of this, all of the asserted claims necessarily stand or fall

---

that all that is separated from the crude reaction mixture during Pfizer's distillation process is "the isoproponal and some of the solvent that was carried over from the previous steps," and that several components of the crude reaction mixture are not removed at all in the course of distillation. *Id.* at 227-28, 8/11 JTT at 63-73. Synthon's expert, Dr. David Ager, also testified that the compound of formula (3) is still in a mixture following Pfizer's distillation of the solvent, and he admitted that the components of the mixture are the same components as those present before distillation. 8/10 JTT at 242-45.

together with the validity of the independent claim.[7]  And, here, the jury was presented with sufficient evidence to support its conclusion that all of the asserted claims of the '481 patent "f[e]ll together" with independent claim 1. *Finnigan*, 180 F.3d at 1365 n.7. Indeed, a review of the record discloses more than ample evidence to support the jury's invalidity findings with respect to both of the contested claim limitations forming the basis of Synthon's renewed motion for judgment as a matter of law on this ground.[8]

Synthon next claims that "[n]o reasonable jury could find that Pfizer 'communicated' the complete conception of the claimed inventions to Synthon." Synthon Mot. at 2. Because of this, Synthon contends it is entitled to judgment as a matter of law on the issue of invalidity under § 102(f), which provides that "[a] person shall be entitled to a patent unless...he did not himself invent the subject matter sought to be patented... ." 35 U.S.C. § 102(f). In this regard, Synthon is correct that to show derivation under § 102(f), "the party asserting invalidity must prove both prior conception of the invention by another and communication of that conception to the patentee."

---

[7] *See Finnigan Corp. v. Int'l Trade Com'n*, 180 F.3d 1354, 1365 n.7 (Fed. Cir. 1999) (stating that "[t]he parties do not separately argue the validity of dependent claims 2-4...[and that] [t]hese claims therefore stand or fall together with independent claim 1"); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 896 (Fed. Cir. 1984) (recognizing that "[b]ecause the claims have generally been argued together, the validity of all the claims stands or falls with [the independent] claim").

[8] For example, Franciscus Benneker — one of the named inventors of the '481 patent — testified that the reaction scheme depicted in the '481 patent is the same reaction scheme shown in SDD, and that simply by looking at the SDD reaction scheme, he was able to tell there was "an isolation." 8/10 JTT at 90-92. Dr. David Alker, in turn, testified that the use of aqueous methylamine to deprotect the compound of formula (2) was "a very standard method" that was well known prior to 1999. 8/11 JTT at 121. Likewise, Dr. Bartlett testified that methylamine was a well-known deprotectant and that Pfizer specifically disclosed its use in two prior publications. 8/15 JTT at 53-54. Moreover, on this issue, Benneker testified that deprotection using aqueous methylamine in the deprotection step was not an inventive feature of the '481 patent. 8/10 JTT at 103.

*Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997) (citing *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993)). Yet, there is no corresponding requirement, as Synthon argues, that the requisite "communication" for purposes of invalidity by derivation under § 102(f) take place in any particular form or that it occur directly between the prior inventor and the patentee.[9] Here, sufficient evidence was presented in the course of the trial to support the jury's finding of invalidity under § 102(f), namely that Pfizer conceived of the alleged invention before Synthon, and that Pfizer's prior conception was communicated to Synthon prior to its patent application. Indeed, the record reflects, for example, that

> Pfizer's prior use of the compound of formula (3) in its amlodipine production process had been the subject of "substantial documentation and internal discussions" amongst Synthon employees, including Hoorn and the named inventors, and was fully documented in numerous internal Synthon documents — including OPIM, DLOC and "route according to Pfizer" — long before Benneker allegedly conceived of the compound of formula (3).

*Synthon IP, Inc. v. Pfizer, Inc.*, ____ F. Supp. 2d ____, 2007 WL 313287, at *19 (E.D. Va. Jan. 29, 2007). The record also reflects a substantial number of documents located in Synthon's files disclosing Pfizer's prior use of the compound of formula (3) in its amlodipine production process, including specifically SDD. *See id.* This, combined with additional evidence presented in the course of the trial, is clearly sufficient to support the jury's conclusion that Pfizer's prior conception of the claimed invention had been communicated to Synthon, as required for a finding of invalidity

---

[9] *See, e.g., Maxwell v. K Mart Corp.*, 880 F. Supp. 1323, 1333 (D. Minn. 1995) (finding that a reasonable jury could conclude that a prototype passed through a third party to the inventor would constitute the requisite "communication" under § 102(f)); *Sands v. Bonazoli, Kimball, and Palmber*, 223 U.S.P.Q. 450, 452 (B.P.A.I. 1983) (recognizing that "[i]t is well established that derivation is difficult to establish by direct evidence; it can generally only be established from the circumstances of a case") (citations omitted).

by derivation under § 102(f).

Synthon next contends it is entitled to judgment as a matter of law on the issue of invalidity under § 102(g) because "[n]o reasonable jury could find that Pfizer did not suppress or conceal its commercial process for synthesizing amlodipine," including specifically "its distillation process" and its "step-wise synthesis method." Synthon Mot. at 2; Synthon Br. at 23-24. Yet, a review of the record reveals that Synthon is again mistaken, as there was sufficient evidence for the jury to conclude that Pfizer did not suppress or conceal any aspect of its amlodipine production process, including the asserted distillation step. Indeed, Dr. Alker — who authored SDD — testified that he intended to convey in SDD that Pfizer removed the solvent from the compound of formula (3) prior to reacting it with aminocrotonate; he further testified that the only method for doing so that he "could conceive of" was distillation. 8/11 JTT at 143. There was likewise sufficient evidence presented from which the jury could have concluded that SDD and DIA — both determined to be prior art, printed publications within the meaning of 35 U.S.C. § §§ 102(a) and (b)[10] — disclose the two-step synthesis method Synthon claims was suppressed and concealed by Pfizer.

Finally, Synthon claims that "[n]o reasonable jury could find that the asserted claims of the '481 patent are invalid under 35 U.S.C. Section 103 as being obvious in view of the prior art." Synthon Mot. at 2. In support thereof, Synthon relies primarily on the testimony of Alan Pettman — the Pfizer employee who developed Pfizer's amlodipine production process in the 1980s — that it had not been obvious to him to isolate the compound of formula (3) and then react it with

---

[10] In the course of the litigation, Synthon stipulated that SDD was a "printed publication" and DIA, in turn, was deemed to be a printed publication as a matter of law in view of its wide availability and distribution. *See Synthon IP, Inc. v. Pfizer, Inc.*, 1:05cv1267 (E.D. Va. May 26, 2006) (Order); *Synthon IP, Inc. v. Pfizer, Inc.*, 1:05cv1267 (E.D. Va. June 30, 2006) (Order).

aminocrotonate in the course of the synthesis of amlodipine. But significantly, the question of what was obvious or not obvious to Pettman in the 1980s is irrelevant to whether the subject matter claimed was obvious in 1999, when Synthon allegedly conceived of its purported invention. Indeed, the obviousness inquiry asks whether the subject matter "would have been obvious [to one of ordinary skill in the art] *at the time the invention was made.*" *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1289 (Fed. Cir. 2006) (emphasis added).[11] It is also significant to note that Pettman actually testified that the process he developed was based on chemistry that was standard and well-known, and that he did not consider it inventive, even in the 1980s. 8/14 JTT at 85-86. This, combined with the additional evidence presented in the course of the jury trial on the issue of obviousness,[12] is more than sufficient to support the jury's invalidity findings under § 103.

In sum, then, the trial record includes ample evidence to support the jury's findings on all issues of infringement and validity and Synthon's arguments to the contrary are unpersuasive. Synthon's renewed motion for judgment as a matter of law must therefore be denied. *See* Rule 50(a)(1), Fed. R. Civ. P. (authorizing judgment as a matter of law only "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue").

---

[11] Equally unpersuasive are Synthon's arguments (i) that the record included evidence of the prior art "teaching away" from the claimed invention and (ii) that Dr. Bartlett failed to identify a document that provided a motivation to combine prior art references. Synthon Br. at 28-31.

[12] For example, Synthon's own expert, Dr. Ager, acknowledged that "Synthon didn't invent using the compound of formula (3)" and that "Synthon didn't invent isolating a Knoevenagel compound." 8/16 JTT at 7-8. Dr. Ager further testified that isolating a Knoevenagel compound was "very well-known" and accomplished by "known techniques." *Id.*

## II. Motion for a New Trial

As an alternative to its motion for judgment as a matter of law, Synthon moves for a new trial on four grounds, pursuant to Rule 59, Fed. R. Civ. P. Under Rule 59(a), a new trial may be granted in an action in which there has been a trial by jury "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 59(a), Fed. R. Civ. P. In this regard, it is clear under Fourth Circuit precedent that a new trial is warranted only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Systems and Services, Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996) (citations omitted).[13] Significantly, the first two prongs of this standard "require a district court to determine purely factual questions," while the third prong requires an analysis from "[t]he judge's unique vantage point and day-to-day experience with such matters [that] lend expertise and consistency." *Id.*

Synthon's first argument in support of its motion for a new trial is that the submission to the jury of two alternative constructions for the primary disputed claim phrase resulted in jury confusion, reflected in the jury's alleged inconsistent and "nonsensical" verdict. Yet, contrary to Synthon's assertions in this regard, the fact that the jury found "both noninfringement and invalidity for anticipation, derivation, and prior invention" under each of the alternative claim constructions does not render the verdict "nonsensical;" nor is any jury confusion apparent from the record. Rather, a review of the record as a whole reveals sufficient evidence from which the jury could have concluded

---

[13] Again, because a motion for a new trial "is a procedural issue not unique to patent law," Fourth Circuit, rather than Federal Circuit, law applies to Synthon's Rule 59 motion. *Applied Medical*, 435 F.3d at 1364.

that the claims of the '481 patent were not infringed and invalid on multiple grounds, under both alternative definitions. Moreover, even assuming the verdict is somehow inconsistent, as Synthon contends, such an argument was likely waived when Synthon failed to raise the issue before the jury was discharged. *See White v. Celotex Corp.*, 878 F.2d 144, 146 (4th Cir. 1989) (recognizing that the "failure to bring any purported inconsistencies in the jury's verdict to the attention of the court prior to the release of the jury will constitute a waiver of a party's right to seek a new trial"). And, in any event, it is well-settled that apparent verdict inconsistencies are not fatal and verdicts must be upheld even where "no rational reconciliation of the verdicts is possible."[14]

Synthon next claims it is entitled to a new trial because Pfizer was permitted to present its inequitable conduct evidence, while Synthon was barred from introducing evidence of its alleged good faith and Pfizer's lack thereof. In other words, Synthon claims that "[t]he Court erred not only in allowing Pfizer's inequitable conduct story to come in during the jury trial, but also in precluding Synthon from introducing evidence to rebut that story." Synthon Br. at 38. The result of this alleged error, claims Synthon, was extreme prejudice to Synthon warranting a new trial. Yet, what Synthon forgets is that Pfizer was not permitted to present evidence in the course of the jury trial that was related solely to the issue of inequitable conduct. Rather, the alleged "inequitable conduct" evidence Synthon complains of was clearly relevant to the various invalidity issues before the jury, including the question whether Synthon derived its alleged invention from Pfizer's work pursuant to 35 U.S.C. § 102(f). Synthon's evidence of good faith, however, was not similarly relevant to any issues of

---

[14] *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035-36 (9th Cir. 2003) (recognizing that inconsistencies are not fatal and verdicts must be accepted even where "no rational reconciliation of the verdicts [is] possible") (citations omitted); *Hines v. IBG Int'l, Inc.*, 813 F.2d 1331, 1334 (4th Cir. 1987) (recognizing that the principle that inconsistent verdicts must be accepted "has been applied in civil cases") (citations omitted).

infringement or validity presented to the jury. Indeed, Synthon acknowledged in the course of the pre-trial proceedings that this evidence formed the basis of its willful infringement claim — which issue was appropriately bifurcated from the preliminary issues of infringement and validity — and was thus properly excluded from the jury's consideration.

Synthon next contends that the Court's instruction to the jury on Pfizer's § 102(g) validity defense was incomplete and prejudicial to Synthon. On this point, the jury was instructed that "a patent may validly issue to a subsequent inventor if the prior inventor suppresses or conceals the claimed invention." 8/16 JTT at 81. Synthon, however, claims the instruction given was biased in Pfizer's favor because it did not include additional language regarding how the law favors placing inventions in the public domain over suppressing or concealing inventions.[15] Assuming Synthon's argument in this regard was neither waived nor abandoned,[16] the argument nonetheless fails on the merits. Simply put, Synthon admits that the instruction given was legally correct and it is not entitled to a new trial simply because its favored wording for the instruction was denied. Moreover,

---

[15] Specifically, Synthon requested that the following additional language be added to the § 102(g) instruction read to the jury:

> The law encourag[es] inventors to take steps to ensure that the public has gained the knowledge of their inventions so that inventions are preserved in the public domain[.] [A]s between a prior inventor who benefits from a process by [selling] his product, but suppresses, conceals, or otherwise keeps the process from the public and a later inventor who promptly files a patent application from which the public will gain a disclosure of the process, the law favors the latter.

8/16 JTT at 79.

[16] At the conclusion of the instructions conference, counsel for Synthon, when asked by the Court, "[d]o you have any problem with the instructions," responded, "[n]o, I don't, your Honor." 8/16 JTT at 85.

it is clear, as the Court noted in the course of the instructions conference, that Synthon's additional proposed language for the § 102(g) instruction was "argumentative," "too long and confusing," "full of lawyer jargon," and relevant to the policies underlying the patent laws, which "has no place in an instruction." 8/16 JTT at 80.

Finally, Synthon contends that a new trial is warranted in light of alleged improper, biased and prejudicial questioning of witnesses by the Court. On this issue, it is important to note at the outset that Synthon does not dispute that a district court has the power and the discretion to question witnesses. Indeed, trial judges have a responsibility, particularly in complex technical cases as presented here, to ensure that matters are clarified for the record.[17] Counsel should also be reminded that trials are searches for the truth; they are not games in which lawyers compete to see who has the greatest skill at spinning the facts or leaving some matter pregnantly unclear. With these principles in mind, a review of the record reveals that less than 7% of the total questions asked of the witnesses in the course of the jury trial were asked by the Court, all for the sole purpose of clarifying matters presented to the jury in a highly technical and complicated case. Synthon's motion for a new trial on this ground is thus appropriately denied.

### III.

Accordingly, for the foregoing reasons,

---

[17] *See United States v. Morrow*, 925 F.2d 779, 781 (4th Cir. 1991) (recognizing that it is "settled beyond doubt that in a federal court the judge has the right, and often an obligation, to interrupt the presentations of counsel in order to clarify misunderstandings or otherwise insure that the trial proceeds efficiently and fairly") (quoting *United States v. Cole*, 491 F.2d 1276, 1278 (4th Cir. 1974)); Rule 611(a), Fed. R. Evid. (providing that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment")

It is hereby **ORDERED** that Synthon's renewed motion for judgment as a matter of law pursuant to Rule 50(b), Fed. R. Civ. P., or in the alternative, motion for a new trial pursuant to Rule 59, Fed. R. Civ. P. is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record.


_____/s/_____
Alexandria, VA                                       T. S. Ellis, III
April 6, 2007                                        United States District Judge