THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SYNTHON IP, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:05cv1267 |
| ) | |
| PFIZER INC., ) | |
| Defendant. ) | |

## ORDER

The matter is before the Court on Pfizer Inc.'s (Pfizer) motion to declare this an exceptional case and for attorney's fees and expenses pursuant to 35 U.S.C. § 285. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process. For the reasons set forth below, Pfizer's motion must be granted.

### I. Exceptional Case

Title 35 U.S.C. § 285 authorizes the court "in exceptional cases" to award "reasonable attorney's fees to the prevailing party." 35 U.S.C. § 285. The prevailing party must establish the exceptional nature of the case by clear and convincing evidence. *See Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992). Yet, even if this burden is met, an award of fees under § 285 remains discretionary as the trial court is in the best position to weigh the various factors that contribute to a fair allocation of the burdens of litigation. *See S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). Thus, determining whether attorney's fees should be awarded under § 285 is a two-step process: First, the district court must make a factual determination as to whether the prevailing party has established by clear and convincing

1

evidence that the case is "exceptional," and, if so, the district court must then exercise its discretion in determining whether an award of attorney's fees is appropriate in the circumstances. *See Enzo Biochem, Inc., v. Calgene, Inc.* 188 F.3d 1362, 1370 (Fed. Cir. 1999).

With respect to the first prong of the analysis, it is clear that a variety of factual circumstances may give rise to a finding that a case is exceptional for purposes of § 285. Indeed, the Court of Appeals for the Federal Circuit has "recognized many types of misconduct that may create an exceptional case for purposes of awarding fees, including inequitable conduct before the PTO, litigation misconduct such as vexatious or unjustified litigation or frivolous filings, and willful infringement." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F. 3d 1339, 1350 (Fed. Cir. 2004) (citations omitted). In other words, "[e]xceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Industries, Inc. v. Plastic Recovery Technologies, Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006) (citations omitted).[1]

In the case of awards to prevailing accused infringers in particular, as involved here, "exceptional cases are normally those of bad faith litigation or those involving fraud or inequitable

---

[1] *See also Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004) (stating that "[e]xceptional cases include those involving inequitable conduct before the [Patent and Trademark Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement") (citations and internal quotation marks omitted); *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003) (recognizing that "[t]he prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement") (citations omitted); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1371 (Fed. Cir. 2003) (stating that "[a]mong the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit") (citation omitted)

2

conduct by the patentee in procuring the patent." *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1371-72 (Fed. Cir. 2003). Indeed, "inequitable conduct is a substantive patent issue that must be taken into consideration in determinations under 35 U.S.C. § 285." *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 182 F.3d 1356, 1359 (Fed. Cir. 1999). It is also clear that "[a]bsent misconduct in the litigation or in securing the patent, a trial court may only sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless." *Serious Industries*, 459 F.3d at 1322. In this regard, it has been recognized that where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003) (citing *Eltech Systems, Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 811 (Fed. Cir.1990)).[2]

These principles, applied here, compel the conclusion that this case is appropriately deemed "exceptional" in light of Synthon's inequitable conduct before the Patent and Trademark Office (PTO), which conduct is fully detailed in the January 29, 2007 Memorandum Opinion and need not be reiterated here. *See Synthon IP, Inc. v. Pfizer, Inc.*, 472 F. Supp. 2d 760 (E.D. Va. 2007). And significantly, while Synthon's inequitable conduct before the PTO is alone sufficiently compelling to render this case exceptional, it should also be noted that Synthon's litigation strategy and conduct in the course of these proceedings further supports an exceptional case finding. Indeed, a review of the record as a whole makes clear that Synthon copied and sought patents on what it knew to be

---

[2] For purposes of the § 285 exceptional case analysis, the Federal Circuit has recognized that "[a] frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known was baseless." *Stephens v. Tech International, Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004) (citation omitted).

Pfizer's work and then, once those patents had issued, filed against Pfizer what it knew, or should have known with reasonable investigation, was a baseless suit for willful infringement of two invalid patents.[3] In the circumstances, this case is plainly "exceptional" within the meaning of § 285.

Yet, as previously noted, even where a case is deemed "exceptional" for purposes of § 285, as here, it does not necessarily follow that attorney's fees must be awarded to the prevailing party. Rather, there are a number of factors courts may consider in determining whether an award of attorney's fees is warranted, including the "closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser." *J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1051 (Fed. Cir. 1987). The circumstances of this case, combined with fundamental principles of fairness, compel the conclusion that a fee award to Pfizer is indeed warranted under § 285. Indeed, a review of the record reveals that it "it would be *grossly unjust* [for Pfizer to]...be left to bear the burden of [its] own counsel" in this exceptional case. *Id.* at 1052 (emphasis in original) (citing *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 691 (Fed. Cir. 1984)). Pfizer's motion for an award of attorney's fees under § 285 must therefore be granted and Synthon's arguments to the contrary are wholly unpersuasive.[4]

---

[3] Indeed, the jury found the asserted claims of the '481 patent invalid on four separate grounds, namely (i) anticipation by Sandwich Drug Discoveries (SDD) and Dihydropyridines in Action (DIA) under 35 U.S.C. § 102(a) and (b), (ii) derivation from Pfizer's work under 35 U.S.C. § 102(f), (iii) prior invention by Pfizer under 35 U.S.C. § 102(g), and (iv) obviousness under 35 U.S.C. § 103. *See Synthon IP, Inc. v. Pfizer, Inc.*, 1:05cv1267 (E.D. Va. 2006) (Special Verdict Form). Moreover, Synthon itself disclaimed seven of the eight asserted claims of the '738 patent based on its stipulation that SDD is a prior art, printed publication disclosing the limitations set forth in those seven claims; Synthon likewise withdrew its allegation of infringement with respect to the remaining claim of the '738 patent just prior to trial.

[4] Among Synthon's unpersuasive arguments in this regard is the argument that it would be unfair to require Synthon IP to reimburse Pfizer for its fees and expenses in this case given

## II. Fee award[5]

In its petition, Pfizer requests (i) $3,416,566.50 in attorney's fees, (ii) $592,715.09 in nontaxable costs and expenses, (iii) $345,553.34 in expert witness fees and costs, and (iv) pre-judgment and post-judgment interest. Synthon, not surprisingly, objects to Pfizer's requests in numerous respects.

The legal principles dispositive of a fee petition are well-settled. First, the fee applicant — in this case Pfizer — bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Second, "[t]he most useful starting point for determining the amount of a reasonable fee" is to determine the lodestar amount, or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* In this regard, "[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *See EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568 (E.D. Va. 1988).[6] The determination of a fee award must also be informed by

---

that Synthon IP is the assignee of the patents in issue and was not directly involved in the acts that formed the basis of the inequitable conduct finding. Yet, contrary to Synthon's assertions, Synthon IP is not so removed from the underlying conduct rendering this an exceptional case under § 285 that it should be insulated from the imposition of a fee sanction. Indeed, Mark Buscher himself — the prosecuting attorney of the patents in issue and the president of Synthon IP — acknowledged in his testimony that he "probably" would not have sought a claim on the compound of formula (3) had he known about or learned of SDD in the course of the prosecution. Bench Trial Transcript, vol. 1, pp. 63, 66. Despite this acknowledgment, Mr. Buscher nonetheless made the decision to initiate and then to pursue until the bitter end the instant patent infringement suit against Pfizer.

[5] The Federal Circuit, in *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340 (Fed. Cir. 2001), ruled that a decision to award an unquantified amount of attorneys' fees in an exceptional case under 35 U.S.C. § 285 is not final for purposes of appeal. It is therefore necessary to quantify the precise amount of fees to be awarded to Pfizer in this instance.

[6] Indeed, fee claimants must submit documentation that reflects "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable

"other considerations that may lead the district court to adjust the fee upward or downward," including the twelve so-called "*Johnson*" factors. *Hensley*, 461 U.S. at 434 (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir.1974)).[7] Moreover, courts frequently exercise their discretion to reduce an entire fee request or portions thereof by a stated percentage in order to address some deficiency in the application, such as redundant time entries, failure to exercise billing judgment, or excessive number of hours sought.[8] Ultimately, "[t]he matter of attorney fees

---

particularity," sufficient to permit the court to weigh the hours claimed and exclude hours that were not "reasonably expended." *EEOC*, 685 F. Supp. 568 (citing *Hensley*, 461 U.S. at 433). Inadequate documentation includes the practice of grouping, or "lumping," several tasks together under a single entry, without specifying the amount of time spent on each particular task. *See, e.g., In re Great Sweats, Inc.*, 113 B.R. 240, 244 (Bankr. E.D. Va. 1990) (disapproving "lumping" of several tasks under a single entry without specifying the amount of time spent on each task so that no accurate determination of the reasonableness of time expended can be made); *In re WHET, Inc.*, 58 B.R. 278, 280 (Bankr. D. Mass. 1986) (noting that "lumping" of an entire day's activities makes attorneys' records of absolutely no value for any analytical purpose). This and other instances of inadequate documentation prevent an accurate determination of the reasonableness of the time expended in a case and because of this, inadequate documentation is a proper basis for reducing a fee award, which can be accomplished in one of two ways, namely (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity and the counsel involved. *See EEOC*, 685 F. Supp. 568 (citing *Uzzell v. Friday*, 618 F.Supp. 1222, 1226, 1229 (M.D.N.C.1985) (fees reduced 25% for attorneys and 35% for paralegals as a result of inadequate documentation)).

[7] Specifically, the twelve *Johnson* factors are as follows: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal services; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorneys' professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

[8] *See, e.g., Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996) (15% overall reduction to compensate for failure to exercise billing judgment); *Leroy v. City of Houston*, 831 F.2d 576, 586 n. 16 (5th Cir.1987) (13% overall reduction based on incomplete time records); *Carr v. The Fort Morgan School District*, 4 F. Supp. 2d 998, 1003 (D. Colo.1998) (15% overall reduction to

rests, of course, within the sound discretion of the trial judge, who is in the best position to determine whether,...[and to what extent], they should be awarded." *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1458 (Fed. Cir. 1984). And, in all instances, it is important to remember that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. In other words, the tail should not wag the dog.

Although a review of Pfizer's submissions reveals a reasonable hourly rate for the various attorneys and legal personnel involved, Pfizer's petition is replete with instances of lumping multiple tasks together under the same entry, thereby preventing a confident assessment of the quantum of, and hence reasonableness of, the time expended on each task.[9] *See EEOC*, 685 F. Supp. 568. The petition also includes numerous instances of excessive, duplicative, nondescript, unnecessary and/or inefficient work.[10] For these reasons, and based on a review of the record as a whole, including the applicable *Johnson* factors and the level of exceptionality of the case under § 285, a 20% overall reduction in Pfizer's fee request is reasonable and appropriate in the circumstances, resulting in a total fee award of $2,733,253.20. *See supra* n.8.

In addition to attorney's fees, Pfizer also requests reimbursement for $592,715.09 in

---

account for excessive time spent by attorneys with clients, excessive trial preparation, duplicative time entries, and insufficient detail); *Uzzell v. Friday*, 618 F. Supp. 1222, 1226, 1229 (M.D.N.C.1985) (25% reduction of one portion of fees "to eliminate the possibility of duplicative or unreasonable time" and 35% reduction of another portion of fees based on inadequate documentation).

[9] For example, more than 1,000 hours in time entries include work on summary judgment issues together with other unrelated tasks. Likewise, more than 400 hours in time entries mention work on claim construction, in addition to other tasks.

[10] For example, Pfizer's petition contains over fifty entries — totaling over 200 hours — for work identified simply as "legal research," without any further description of the particular issue or issues researched by the participating attorney.

nontaxable costs and expenses relating to, *inter alia*, (i) attorney and paralegal travel, (ii) demonstrative exhibits, (iii) copying, (iv) courier services, (v) legal research, (vi) patents, file histories and translations, and (vii) transcripts. Although it is indeed appropriate under § 285 to compensate Pfizer for its necessary costs and expenses incurred in this "exceptional" case, Pfizer's specific requests in this regard suffer from many of the same deficiencies found in its fee petition, particularly unnecessary work and excessiveness.[11] It is therefore appropriate to apply a 20% reduction to Pfizer's non-taxable cost and expense award, as well, resulting in a total award of $474,172.07. *See supra* n.8

Pfizer also requests $345,553.34 in expert witness fees and costs, as well as both pre-judgment and post-judgment interest. With respect to the expert witness fees, in particular, the Federal Circuit has recognized that § 285 does not provide a basis for an award of expert witness fees, as such fees are controlled by 28 U.S.C. § 1821(b). *See Amsted Industries Inc. v. Buckeye Steel Casting Co.*, 23 F.3d 374 (Fed. Cir. 1994). Moreover, it is well-settled that awards in exceptional cases under 35 U.S.C. § 285 need not include expenses of any particular type or amount. *See Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988) (stating that "[b]ecause of the variety of acts that may render a case 'exceptional,' we do not hold that all awards under Section 285 may or must include expenses, or expenses of any particular type or amount"). The same is true of pre-judgment interest

---

[11] For example, Pfizer requests $178,172.88 for investigative and consultation services rendered by Animation Technologies, Inc. related to various demonstrative exhibits used in the course of the litigation. While such demonstrative exhibits were arguably helpful in some instances to an understanding of the various issues presented, they were not necessary for a proper resolution of this case. Likewise, Pfizer requests an exorbitant amount — nearly $100,000 — for copying services performed by an outside agency, Digital Legal Services, LLC, in addition to counsel's in-house copying expenses of more than $20,000.

on any fee award.[12] In the circumstances, and given the substantial amount of fees and expenses already awarded to Pfizer pursuant to § 285, an additional award for expert witness fees and pre-judgment interest is not warranted in this case. Post-judgment interest, however, is appropriate at the statutory rate.

### III. Conclusion

Accordingly, for all of the foregoing reasons, and for good cause shown,

It is hereby **ORDERED** that Pfizer's motion to declare this an exceptional case and for an award of attorney's fees and expenses pursuant to 35 U.S.C. § 285 is **GRANTED**.

It is further **ORDERED** that this case is deemed exceptional under 35 U.S.C. § 285.

It is further **ORDERED** that Pfizer is awarded attorney's fees and non-taxable costs and expenses in the total amount of $3,207,425.27, with post-award interest to accrue at the statutory rate.

The Clerk is **DIRECTED** to enter judgment in accordance with this Order pursuant to Rule 58, Fed. R. Civ. P. and to place this matter among the ended causes.

The Clerk is further directed to send a copy of this Order to all counsel of record.

Alexandria, VA
April 16, 2007

/s/
T. S. Ellis, III
United States District Judge

---

[12] *See Mathis*, 857 F.2d at 754 (stating that "the district court's inherent equitable power and informed discretion remain available in determining the level of exceptionality [a]rising out of the offender's particular conduct, and in then determining, in light of that conduct, the compensatory quantum of the award, including the amount of attorney fees, what if any expenses shall be included, and the rate of prejudgment interest, if any, on the award").